John A. Conkle (SB# 117849)
*John.Conkle@ThompsonHine.com*
Amanda R. Washton (SB# 227541)
*Amanda.Washton@ThompsonHine.com*
Kelly M. Peterson (SB# 351282)
*Kelly.Peterson@ThompsonHine.com*
**THOMPSON HINE LLP**
2049 Century Park East, Suite 3500
Los Angeles, California 90067-3217
Phone: (310) 998-9100 • Fax: (310) 998-9109

Attorneys for Defendant Jackson-Mitchell, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON-MITCHELL, INC,, a California Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:25-cv-09174<br><br>**DEFENDANT JACKSON-MITCHELL, INC.'S NOTICE OF REMOVAL**<br><br>Sonoma County Superior Court Case No. 25CV06343<br><br>Action Filed: September 8, 2025<br>Trial Date: None |

TO THE COURT CLERK AND ALL COUNSEL AND PARTIES OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Jackson-Mitchell, Inc. ("Defendant"), by and through its counsel, remove to this Court the action entitled *Juan Rodriguez v. Jackson Mitchell, Inc.* ("Action"), Case No. 25CV06343, which was originally filed in the Superior Court of the State of California for the County of Sonoma.

## I. INTRODUCTION

Removal is proper because this putative class action meets the jurisdictional requirements under the Class Action Fairness Act of 2005 ("CAFA"). The Action involves an amount in controversy exceeding $5,000,000, asserts a putative class consisting of more than 100 members, and is between citizens of different states.

Defendant's filing of this Notice of Removal is in no way a concession or an assessment of its liability in this Action. *Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010). Defendant disputes its liability in any amount as to all claims raised by Plaintiff Juan Rodriguez ("Plaintiff") and/or any putative class member (collectively, "Plaintiffs"). Defendant further disputes that Plaintiff and/or any member of the putative class suffered any injury or incurred damages as a result of Defendant's acts. Defendant further disputes that Plaintiff, any putative class member, or their attorneys are entitled to any relief, including but not limited to compensatory or consequential damages, civil penalties, punitive damages, attorney's fees, prejudgment interest, or injunctive relief.

Defendant hereby reserves the right to contest the legal sufficiency of all of the claims raised in this Action, and the right to raise any other defenses.

## II. THE FILING OF THIS NOTICE OF REMOVAL IS TIMELY

On September 8, 2025, Plaintiff filed a Complaint on behalf of a putative class alleging numerous violations of the California Labor Code in the Superior Court of the State of California for the County of Sonoma. *See*, *Juan Rodriguez v. Jackson-Mitchell, Inc.*, Case No. 25CV06343. (Ex. A (Complaint); Declaration of Amanda R.

Washton ("ARW Decl.") at ¶ 2.) Defendant was served with the Summons and Complaint on September 25, 2025. (*Id.*) Defendant attaches a copy of the Summons and Complaint served upon it as **Exhibit A,** and sets forth the grounds for removal below. (*Id.*) Defendant attaches a copy of the proof of service of the Summons and Complaint filed in the Superior Court of the State of California in the County of Sonoma, as **Exhibit B**. (*Id*. at ¶ 3.) Under 28 U.S.C. § 1446(b)(1), Defendant must remove the Action within thirty days of service. The filing of this Notice of Removal is therefore timely. Under 28 U.S.C. § 1446(a), Defendant need only provide a "short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."

Following the filing of this Notice of Removal, Defendant will also promptly serve a copy of this Notice of Removal to Plaintiffs' counsel and file a copy of the Notice with the Clerk of the Superior Court of the State of California for the County of Sonoma. 28 U.S.C. § 1446(d). (*Id*. at ¶ 4.)

## III. CLASS ACTION ALLEGATIONS

Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated employees, defined as:

> All current or former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial. (the "Class")

> All current or former non-exempt who worked for Defendant in California and worked overtime hours during at least one shift during the four years immediately preceding the filing of the Complaint through the date of trial. ("the Overtime Subclass")

> All current or former employees who work or worked for Defendant in California during the one year immediately preceding the filing of the Complaint through the date of trial. ("the Wage Statement Subclass")

> All employees who work or worked for Defendant in California and who left their employment during the three years immediately preceding the filing of the Complaint through the date of trial. ("Waiting Time Penalty Subclass")
>
> (collectively "the Classes")

(Ex. A, Complaint at 10:24-11:9 [¶ 42].) The Complaint further specifies that Plaintiff worked for Defendant in Sebastopol, California (the "Sebastopol Facility"). (Ex. A, Complaint at ¶ 16.) Plaintiff worked at Defendant's Sebastopol Facility from July 2006 to July 18, 2025. (*See* Declaration of Leticia Kegler in Support of Defendant Jackson Mitchell Inc.'s Notice of Removal ("Kegler Decl.") at ¶ 4.)

The Complaint vaguely (and repetitively) alleges that Defendant fails to pay its employees for all hours worked; that its nonexempt employees are not paid for all overtime hours; that it does not include non-discretionary bonuses into its employees' "regular rate of pay;" that it failed to provide the legally required paid sick days at the legal rate; that its workplace practices do not allow timely and duty-free meal periods and rest breaks; that the employees' are owed wage statement penalties; that it required employees to incur necessary expenses for work related purposes without reimbursement; and that putative class members terminated from employment do not receive all wages owed at termination. (Ex. A, Complaint at ¶¶ 19-41).) The Complaint brings nine causes of action for: 1) failure to pay all minimum wages; 2) failure to pay all overtime wages; 3) meal period violations; 4) rest period violations; 5) failure to pay all sick time; 6) wage statement violations; 7) waiting time penalties; 8) failure to reimburse necessary business expenses; and 9) unfair competition. (Ex. A, Complaint at ¶¶ 50-98.)

Plaintiffs seek relief in the form of an order certifying the proposed classes, an order appointing Plaintiff as a representative of the classes, an order appointing counsel for plaintiff as counsel for the classes, for compensatory and consequential damages, reimbursement of business expenses, injunctive relief, civil penalties,

statutory damages and penalties, restitution, an injunction against unfair business practices, interest, and reasonable attorneys' fees and costs. (Ex. A, Complaint, Prayer for Relief.)

## IV. THE CLASS ACTION SATISFIES THE JURISDICTIONAL PREREQUISITES FOR REMOVAL UNDER CAFA

Defendant may remove this Action under 28 U.S.C. § 1446(a) by providing a "short and plain statement of the grounds for removal…." Defendant's removal allegations should be construed liberally. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

Under CAFA, a district court has original jurisdiction over a civil action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which…any member of a class of plaintiffs is a citizen of a State different from any defendant[,]" and is a class action with at least 100 putative class members. 28 U.S.C. §§ 1332(d)(2), (5)(B). This Action meets each of these prerequisites.

### A. THERE ARE OVER 100 MEMBERS IN THE PUTATIVE CLASS

A class action may be removed under CAFA if the number of members of all proposed plaintiff classes in the aggregate is more than 100. 28 U.S.C. § 1332(d)(5)(B). There are approximately 189 employees who worked, or are working, at the Sebastopol Facility during the Class Period. (Kegler Decl. at ¶ 5.) Because the putative class consists of more than 100 members, this Action meets the jurisdictional prerequisite under 28 U.S.C. § 1332(d)(5)(B).

### B. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

When a class action is removed under CAFA, the district court can exercise original jurisdiction over the action when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs [… .]" 28 U.S.C. § 1332(d)(2).

Although Defendant disputes any liability as to Plaintiffs' claims, and disputes that Plaintiffs and/or the putative class suffered any injury or incurred any damages,

the amount in controversy raised by the claims asserted in the class action Complaint, in the aggregate, theoretically exceed $5,000,000, exclusive of interest and costs. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Anderson v. Starbucks Corp.*, 556 F.Supp.3d 1132, 1136 (N.D. Cal. 2020).

To meet this jurisdictional requirement, under 28 U.S.C. § 1446(a), "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC,* 135 S. Ct. at 554 ("By borrowing Rule 8(a)'s 'short and plain statement' standard, corroborative history indicates, Congress intended to clarify that courts should 'apply the same liberal rules [to removal allegations as] to other matters of pleading. … The amount-in-controversy allegation of a plaintiff invoking federal-court jurisdiction is accepted if made in good faith.'(citation omitted)"; *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020).

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. … The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (*citing Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005), and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F. 3d 394, 399 (2d Cir. 2003)). *See also Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (unpublished) (*quoting Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal.2002)).

To meet the amount in controversy threshold when a complaint fails to specify the amount of damages sought, a defendant need only show that "it is more likely than

not that the amount in controversy satisfies the federal diversity jurisdictional amount requirement." *Abrego v. The Dow Chem. Co.*, 443 F. 3d 676, 683 (9th Cir. 2006) (*quoting Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996)); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1148 (C.D. Cal. 2010) (a CAFA case). Here, Plaintiffs seek relief in the form of damages for nine separate claims, attorney's fees, injunctive relief, and more, but do not set forth a numerical sum sought. Defendant provides payroll services to the Sebastopol Facility. (Kegler Decl. at ¶ 3.) Though the putative class period is still running for the purposes of calculating the potential amount in controversy, Defendant collected payroll data from September 8, 2021 (or four years preceding the filing of the Complaint) and September 8, 2025, and uses such data to calculate the following estimates. (*Id.*)

**<u>Minimum Wage and Overtime Claims</u>**

Plaintiffs' first and second causes of action bring separate nonpayment of minimum wages, for all hours worked, and overtime claims. While Defendant denies the factual allegations pertaining to Plaintiffs' minimum wage and overtime claims, for purposes of this Notice of Removal, Defendant estimates that approximately 133 nonexempt employees worked at the Sebastopol Facility from September 8, 2021, to the present. (Kegler Decl. at ¶ 6.) The average hourly wage rate for these nonexempt workers, during the full four-year Class Period is $24.98. (*Id.*) For the nonpayment claim, Defendant assumes that each of the 133 nonexempt class members suffered at least one violation per week. Thus, Defendant asserts that the amount in controversy for Plaintiffs' unpaid wages claim is $347,772 (13,922 workweeks x $24.98 avg rate). Based on Plaintiffs' assertion that they worked "many days" in which Defendant failed to pay overtime, Defendant applies a rate of one violation per week for overtime claims as it did for minimum wage claims.

Though Plaintiffs' overtime claim is based on Defendant's purported failure to pay either 1.5 times the regular rate or twice the regular rate, as circumstances required, Defendant applies only the lower rate. Accordingly, Defendant assumes

each putative class member would be owed one hour at one and a half times the employee's standard hourly rate. Based on these assumptions, Defendant asserts that the amount in controversy for Plaintiffs' unpaid overtime claim is $521,657.34.

**<u>Meal and Rest Period Violations</u>**

Plaintiffs, in their Third and Fourth Causes of Action, also seek penalties for missed meal periods and rest breaks, in the form of "unpaid meal period premium wages" and "unpaid rest period premium wages" pursuant to Cal. Lab. Code § 226.7(c). (*See* Ex. A, ¶¶ 65, 70.) Though Plaintiff fails to set forth any factual allegations regarding his typical work schedule, he generally alleges that "when Plaintiff and other non-exempt employees worked more than 10.0 hours in a shift, they were not allowed and permitted to take a mandated second meal period before the end of the tenth hour of work in violation of the Labor Code and applicable Wage Orders." (*Id.* at ¶ 31.) For purposes of estimating the potential premiums sought in the Complaint, Defendant will use a typical schedule of 5 days/week. Again, while Defendant denies the factual allegations pertaining to Plaintiffs' meal periods and rest breaks claims, Defendant estimates that there were approximately 133 nonexempt employees employed at the Sebastopol Facility from September 8, 2021, to the present, and they worked approximately 13,922 workweeks, or 69,610 shifts,[1] at an average wage rate of $24.98. (Kegler Decl. at ¶ 6.) Though Plaintiff alleges three types of alleged meal and rest break violations (first meal period, second meal period, and rest breaks), Defendant applies an average meal period and/or rest break violation rate of 50%, or 2.5 meal period violations and 2.5 rest period violations for each five-day workweek. *See Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (Employer's assumption of a 50 percent violation rate for missed meal and rest breaks is reasonable); *Getaw v. Consolidated Disposal Service, LLC*, 2021 WL 4902465 (C.D. Cal. Oct. 20, 2021) (Confirming the appropriate calculation based

[1] Using a standard 5 day/week schedule.

upon the facts alleged in the complaint). This means that if using a similar violation rate, Defendant can reasonably assume at least one type of violation (meal or rest) per shift. Thus, Defendant estimates that the amount in controversy for this claim is $1,738,857.80 (69,610 shifts * $24.98/hr (for one type of meal or rest break violation per shift).

**Failure to Pay All Sick Time**

Plaintiffs also bring a failure to pay sick time claim (Cause of Action Five) based upon an allegation that Defendant did not to pay sick time at the "regular rate of pay" by failing to calculate all non-discretionary pay[2] into the calculation for sick pay. (Complaint at 72-75.) Though the Complaint does not identify the precise non-discretionary pay amounts that Defendant failed to calculate into the regular rate of pay, Defendant estimates the amount in controversy for this claim is $181,440. Here, the potential class of 189 employees, over a 3-year class period, each use an average of 40 hours of paid sick leave per year. (Kegler Decl. at ¶ 5.) Though Defendant disputes that any pay differentials or non-discretionary pay was even paid to these workers, based upon the vague and expansive allegations in the Complaint listing all manner of "forms of renumeration" that should have been calculated, the "regular rate" could have been reasonably been underestimated by $2 per hour.

- Total paid sick leave hours: 189 employees * 40 hours/year * 3 years = 22,680 hours
- Total wage underpayment: 22,680 hours * $2/hour = $45,360

[2] "Defendant uniformly failed to properly calculate and pay overtime wages at the proper legal rate due to Defendant's failure to include all forms of compensation/remuneration, including, but not limited to, stipends, shift pay, non-discretionary bonuses, commissions, incentives, and all other forms of remuneration in calculating the 'regular rate of pay' for purposes of overtime compensation." (Ex. A, Complaint at ¶ 24.)

**Wage Statement Violations**

In his Sixth Cause of Action, Plaintiffs also contend that the putative class is entitled to penalties for inaccurate wage statements pursuant to California Labor Code § 226(e), which is $50.00 for the initial pay period in which the violation occurred and $100.00 for each subsequent pay period violation, up to the statutory maximum amount of $4,000.00. (Ex. A, Complaint at ¶ 82.) When using conservative assumptions to estimate the amount in controversy for the Section 226 claim, Defendant approximates the amount in controversy for this claim alone is nearly $500,000. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (accepting estimate made "in good faith" based on "relatively conservative" figures when evaluating a motion to remand).

Here, while Defendant denies the factual allegations pertaining to Plaintiffs' inaccurate wage statements claim, Defendant assumes that Plaintiffs will recover $50.00 for each initial violation and $100 for each subsequent violation if the allegations in the Complaint are true (up to the $4,000 max per employee). Defendant estimates that there were approximately 125 employees employed at the Sebastopol Facility, from September 8, 2024, to the present. (Kegler Decl. at ¶ 8.) Plaintiffs' wage statements claim references an undefined "Class Period" in this claim but notes that the Defendant "continues to issue wage statements to its employees," alleging that the wage statement period is continuing. (Ex. A, at ¶ 79.) Based on these assumptions, Defendant estimates the amount in controversy for this single claim is currently $500,000 (125 * $4,000). However, if these alleged penalties continue to run during the pendency of this action, the number of employees reaching the statutory maximum could increase.

**Waiting Time Penalties**

In Plaintiffs' Seventh Cause of Action, Plaintiffs contend that the putative class is entitled to waiting time penalties under California Labor Code § 203. While Defendant denies the factual allegations pertaining to Plaintiffs' waiting time

penalties claim, for purposes of this Notice of Removal, Defendant estimates that approximately 71 employees were separated from their employment at the Sebastopol Facility from September 8, 2022, to the present. (Kegler Decl. at ¶ 7.) Defendant estimates that the average hourly rate for terminated employees between September 8, 2022, and the present is approximately $33.85. (*Id*.) Assuming Plaintiffs' allegations are true for purposes of removal, and that the maximum statutory penalty of 30 days applies, Defendant estimates the amount in controversy for this single claim is approximately $576,804 ($33.85/hr * 8 hours * 30 days * 71 employees).[3]

**Unreimbursed Business Expenses**

Plaintiffs also seek reimbursement of business expenses in his Eighth Cause of Action. Though Plaintiff does not identify any actual business expenses Defendant failed to reimburse, there is a vague reference to unreimbursed cell phone expenses in caselaw cited by Plaintiffs in support of their claims. (Ex. A at ¶ 41.) From September 8, 2021, through September 5, 2025, approximately 189 putative class members worked about 19,460 workweeks. (Kegler Decl. ¶ 5.) Though the Defendant denies the factual allegations pertaining to Plaintiffs' unreimbursed business expenses claim, using a conservative estimate of $15 per workweek (equivalent to $60 per month) in unreimbursed cell phone expenses alone, Defendant calculates potential liability of at least $291,900. This assumption is consistent with California federal district court decisions. *See Anderson v. Starbucks Corp*., 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020).

The total amount in controversy for the claims above equals $4,022,351.10. Plaintiffs also seek to recover statutory attorneys' fees, which also must be included in calculating the amount in controversy. In the Ninth Circuit, "a court must include

[3] As the wage statement and waiting time penalties are derivative in nature, should Plaintiff be successful on any of the other claims, these penalties would be assessed for all class members.

future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). "Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Id*. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F. 2d 268, 273 (9th Cir. 1989) (25% of the gross fund is a proper benchmark for awarding attorney's fees in class actions). Using the accepted standard, 25% of the amount in controversy estimated for these three claims is approximately $1,005,587.70.

Plaintiffs also seek injunctive relief and penalties for all causes of action, including but not limited to relief for unpaid wages and unpaid overtime compensation. The cost of compliance with an injunction must also be included in the amount in controversy calculation further increasing the estimate. *Fritsch*, 899 F.3d at 794.

Because the amount in controversy for the nine claims asserted by Plaintiffs exceeds $5,000,000, and any estimate of damages for Plaintiffs' remaining claims, costs of compliance with an injunction, and attorney's fees will serve only to increase the amount in controversy, the amount in controversy in this Action meets the jurisdictional threshold under CAFA.

### C. THERE IS MINIMAL DIVERSITY

When a class action is removed under CAFA, the district court can exercise original jurisdiction over the action when "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(5)(B) (emphasis added). Plaintiff Juan Rodriguez worked at Defendant's Sebastopol facility. (Ex. A, Complaint at ¶ 13.) On information and belief, Plaintiff is a citizen of California. (*Id.* at ¶ 7.) However, at least one exempt and one nonexempt separated employee who are part of the purported putative class have since moved outside of California and

are not presently domiciled in this state. (Kegler Decl. at ¶ 9.) Because at least one class member is a citizen of another state, minimal diversity exists under CAFA.

## V. CONCLUSION

This Action involves an amount in controversy exceeding $5,000,000, involves a putative class consisting of more than 100 members, and is between citizens of different states. Because Defendant timely filed this Notice of Removal and this putative class action meets the jurisdictional prerequisites under CAFA, removal is proper.

Dated: October 24, 2025 THOMPSON HINE LLP

By: *_/s/ Amanda R. Washton_*
John A. Conkle
Amanda R. Washton
Kelly M. Peterson
Attorneys for Defendant Jackson-Mitchell, Inc.